IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 2, 2023 Session

## CONNIE REGULI v. ROGERS ANDERSON AS MAYOR OF WILLIAMSON COUNTY, TENNESSEE

**Appeal from the Chancery Court for Williamson County**
**No. 22CV-51293     Joseph A. Woodruff, Judge**
_____

**No. M2022-00705-COA-R3-CV**
_____

What began as a public records request ended with the trial court imposing sanctions upon the requester for violations of Rule 11 of the Tennessee Rules of Civil Procedure. The trial court concluded that the public records requester violated Rule 11 by including a false statement and deceptive exhibit in her Public Records Act Petition, by failing to conduct an adequate inquiry before filing her Petition, and by having an improper purpose in connection with her anticipated speech regarding any public records that she might obtain via the Public Records Act. The trial court imposed multiple sanctions upon the requester including a $5,000 penalty, a requirement to associate counsel in any future pro se filing within the judicial district, and a dismissal with prejudice of her Petition. We conclude the trial court properly determined the requester violated Rule 11 by including a false statement and deceptive exhibit in her Petition. Given the context of the Public Records Act, we conclude, however, that the trial court erred with regard to its conclusion that the requester made an inadequate inquiry prior to filing her Petition and had an improper purpose in connection with the requester's anticipated use of any documents she obtained. We also conclude the monetary penalty imposed by the trial court violates the Fifty-Dollar Fine Clause of the Tennessee Constitution. Because of our other findings, we vacate the trial court's imposition of all three sanctions, and remand for determination of an appropriate sanction in light of our decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part; Vacated in part; Reversed in part; and Remanded**

JEFFREY USMAN, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Connie Reguli, Brentwood, Tennessee, Pro Se.

Jeffrey D. Moseley and Lisa Carson, Franklin, Tennessee, for the Appellee, Rogers Anderson as Mayor of Williamson County, Tennessee.

**OPINION**

I.

What began as a public records request ended with an imposition of Rule 11 sanctions upon the requester. A challenge to these sanctions stands at the epicenter of this appeal. Appellant Connie Reguli requested Williamson County public records. She was seeking public records that would reveal the extent of the County's expenditures, if any, related to the legal defense of a former County employee in civil and criminal proceedings stemming from allegations of a sexual assault by the former employee in 2013 at a County juvenile detention center. Specifically, Ms. Reguli sought public records related to the County's expenditures on the defense of Mr. Juan Cruz, who had worked for the County as a detention monitor. For a number of years, Ms. Reguli represented the alleged victim, J.H., in civil cases in federal and state courts against Mr. Cruz in connection with his alleged sexual assault of J.H. These suits, which also addressed other mistreatment of J.H., also named as defendants Williamson County, County employees Betsy Adgent (Director of Juvenile Services) and Steve McMahon (Juvenile Detention Center Supervisor), and Williamson County Juvenile Court Judge Sharon Guffee.

The civil suits raised multiple concerns related to the alleged mistreatment of J.H. at the Williamson County juvenile detention facility in 2013. J.H., who was fourteen at the time of alleged conduct giving rise to the litigation, suffers from Pediatric Autoimmune Neuropsychiatric Disorder Associated with Streptococcal Infections ("PANDAS").[1] J.H. alleged that he was placed in solitary confinement for an excessive period of time, did not receive adequate medical and mental health services, and was sexually assaulted by a juvenile detention center employee. The alleged sexual assault resulted in criminal charges being brought against Mr. Cruz, who was acquitted following a trial.

Civil litigation, however, also proceeded. Ms. Reguli, on behalf of J.H., filed suit in federal court alleging civil rights violations, *J.H., by next friend Betty H[.] v. Williamson County, Tennessee*, No. 3-14-cv-02356 (M.D. Tenn.) ("the Federal Civil Rights Case"), and in state court setting forth tort claims, *Betty H[.], as Conservator of J.H. v. Williamson County and Juan Cruz,* Williamson County Circuit Court, Case No. 2014-CV-588 ("the State Tort Case"). In both cases, suit was brought against Mr. Cruz and Williamson County; Williamson County was dismissed from both suits. *See generally J.H. v.*

---

[1] PANDAS often manifests itself in multiple psychiatric symptoms, such as an abrupt onset of Obsessive-Compulsive Disorder ("OCD"), impulsivity, eating disorders, depression, dysgraphia, and problems with sleep.

*Williamson Cnty., Tenn.*, 951 F.3d 709 (6th Cir. 2020); *Betty H. v. Williamson Cnty.*, No. M-2022-00300-COA-R3-CV, 2023 WL 5193537 (Tenn. Ct. App. Aug. 14, 2023).

In February 2022, Ms. Reguli filed a public records request that would become the genesis of this appeal. Therein, she sought the employment records of the Williamson County Juvenile Court Judge Sharon Guffee, whom suit had been brought against as part of the litigation. She also sought the following:

> From December 1, 2013 to date: Attorney fees and legal expenses, experts, court reporters, transcripts, paid for Juan Cruz from December 1, 2013 to date, including but not limited to payments for criminal defense to any attorneys, expert, investigator, or other person in the Case of State v. Juan Cruz, the original indictment having been executed in or about July 2014; including but not limited to payments to Attorneys Karl Pulley, Raquel Abel, Kelli Haas, Jacques Cabell, and any other expert, investigator, legal assistants, or other persons for the defense of Juan Cruz in [the State Tort Case] and [the Federal Civil Rights Case].

Responding to Ms. Reguli's public records request, Mr. Cruz filed a motion in the Federal Civil Rights Case seeking a protective order to prohibit the disclosure of the billing records, classifying those records as protected materials pursuant to attorney-client privilege and the work product doctrine. Mr. Cruz also raised concerns in his motion regarding how Ms. Reguli may put the public records to use with regard to seeking to defund his defense through public advocacy in opposition to the County covering his legal expenses, and he requested an admonishment of Ms. Reguli for her inflammatory extrajudicial comments regarding him and the case. Ms. Reguli and J.H.'s mother had previously complained publicly and privately to County elected officials about the County paying for Mr. Cruz's defense, which they believed to be an unnecessary and improper expenditure of public funds. Ms. Reguli filed in federal court a response in opposition to Mr. Cruz's motion for a protective order.

In March 2022, the County produced a redacted employment file of Judge Guffee. The County, however, denied Ms. Reguli's open records request insofar as it related to its expenditures on the defense of Mr. Cruz. The County's stated basis for denial in a letter written to Ms. Reguli was: "We are currently unable to provide the requested information due to the motion for protective order filed in the Federal case. Please see attached denial form." On the form accompanying the denial letter, the marked basis for denial is: "Your request has been denied pursuant to the following law: . . . Court Case: J.H., by Conservator Betty H[.] v. Williamson County, et al. Motion for protective order filed February 21, 2022. The request is denied until the motion for protective order is heard."

The form provided by the County is a standard form that lists a variety of potential reasons for denial of public records request. Noticeably not marked on the form

accompanying the denial letter is the box appearing next to the reason "The records do not exist." Accordingly, the County indicated that non-existence of the records was not the basis for denial of the records she had requested. In addition to the form, there is no indication in the written denial letter sent to Ms. Reguli that the records she requested did not exist. Nor is there any indication in the letter or on the form that some of the records she requested exist and others do not.

Having received the County's denial, Ms. Reguli promptly filed in March 2022, citing the Tennessee Public Records Act, a *Petition for Show Cause Order and Compel the Production of Public Records on Williamson County* ("Petition"). In her Petition, Ms. Reguli noted that she had "sought to obtain records of invoices and payments county taxpayers made for the criminal and civil defense of Juan Cruz" and that the County had denied her access to these public records. Ms. Reguli noted the County's basis for denial of her request and provided as exhibits to her Petition, among others, the County's denial letter and accompanying denial form as well Mr. Cruz's motion for a protective order and his memorandum in support thereof.

Ms. Reguli also asserted in her Petition the following:

1. The petitioner, Connie Reguli, is a citizen of Williamson County and an attorney licensed to practice law in the State of Tennessee. I am also the attorney of record for J.H. who is the plaintiff in two civil lawsuits. Case 3:14-2356 is a federal civil rights action and Case 2014CV- 588 is a state court tort case. In both cases, Williamson County was a named defendant but has been released from the cases on separate grounds. These cases arose from the abusive and neglectful treatment of J.H. in the Williamson County detention center in the winter of 2013. Fourteen-year-old J.H. was placed in solitary confinement and was assaulted by a Williamson County employee. The Sixth Circuit Court found that holding J.H. in solitary confinement was excessive punishment and violated his constitutional right as a pre-trial detainee. The perpetrator of the assault was Juan Cruz, a Williamson County employee.

The case referenced by Ms. Reguli, *J.H. v. Williamson Cnty., Tenn.*, 951 F.3d 709 (6th Cir. 2020), is a published decision of the United States Court of Appeals for the Sixth Circuit. In her Petition, Ms. Reguli did not include the reporter citation for the decision, a copy of the full reported decision, or pages from the published decision, but she instead included four pages taken from the slip opinion of the case as an exhibit.

In opposition to Ms. Reguli's Petition, the County filed its *Answer to Petition for Show Cause Order and to Compel the Production of Public Records by Williamson County* ("Answer"). Therein, for the first time, the County indicated that any expenditure records provided to Ms. Reguli would be limited to records related to expenditures on Mr. Cruz's

defense in the civil cases. The County indicated that it did not fund Mr. Cruz's criminal defense; accordingly, no records existed of County expenditures related to Mr. Cruz's criminal defense: "While Petitioner sought these records for both Mr. Cruz's criminal and civil cases, any response would necessarily be limited to the civil cases, as no funding was provided by Williamson County for counsel to participate in Mr. Cruz's criminal defense." The County added that "[t]o the best of [the] County's knowledge, Mr. Cruz retained and paid his criminal attorney." The trial court, however, suggested during a subsequent hearing that Mr. Cruz's criminal defense was instead paid for by the State. The record is clear that Mr. Cruz's criminal defense was not paid for by the County, but there is ambiguity in the record as to whether his defense in the criminal case was privately paid for or covered by the State.

In its Answer, the County rejected Ms. Reguli's characterization of the Sixth Circuit decision in J.H.'s case. In doing so, the County stated the following:

> Williamson County denies that the Sixth Circuit Court of Appeals found that J.H.'s actual conditions of confinement violated his constitutional rights. Rather, the Sixth Circuit held that, at the summary judgment stage, taking all of Plaintiff s allegations as true, the allegations made by Plaintiff in that case, if proven, would constitute excessive punishment and would potentially violate his constitutional rights as a pre-trial detainee. Because the Court granted the Motion for Summary Judgment, a factfinder has not ever weighed the credibility of those allegations.

The County also raised concerns regarding Ms. Reguli's "public lobby" in opposition to the County's funding of Mr. Cruz's defense in the civil cases against him.

Turning to its legal basis in opposition to Ms. Reguli's Petition, the County indicated in its Answer that

> Mr. Cruz has asked the United States District Court for the Middle District to intervene and put a stop to Petitioner's interference with his ability to fund a defense by precluding Petitioner from obtaining any information about the fees incurred in his defense. Williamson County has not refused to produce the records, but rather has simply indicated that it is appropriate to defer any production until such time as the U.S. District Court can act. To do otherwise leaves Mr. Cruz without a remedy.

The County conceded that "[o]rdinarily, Williamson County would respond to any request for attorney invoices by providing an estimate for the cost of copying the invoices and redacting attorney work product and attorney-client privileged information." In the present case, however, based upon the pending motion for a protective order in the Federal Civil Rights Case, what the County expressly sought in its Answer to Ms. Reguli's Petition

before the trial court was delay: "Williamson County simply seeks to give the Middle District Court an opportunity to consider Mr. Cruz's request before producing the records in question." The County did not seek sanctions against Ms. Reguli under Tennessee Rule of Civil Procedure 11; the County did not argue in its Answer that Ms. Reguli had violated Rule 11. The County also did not argue that in the absence of a protective order being issued by the federal court, there was any legal basis upon which Ms. Reguli's Petition should be denied.

This case was assigned to Twenty-First Judicial District Circuit Judge Joseph Woodruff. The trial court held a hearing in March 2022 on Ms. Reguli's petition. At the hearing, the trial court judge disclosed that he had recently received a campaign message from Ms. Reguli, who was a candidate for Juvenile Court Judge, that discussed the Federal Civil Rights Case and the State Tort Case.[2] The trial court judge indicated that he did not think that the campaign mailer warranted recusal, but he stated that he would hear any concerns raised by the parties. At the time, neither party voiced any concerns or suggested recusal was needed. At the hearing, the trial court judge indicated his view that Ms. Reguli's Petition may have violated Rule 11 of the Tennessee Rules of Civil Procedure. In noting concerns during the hearing on Ms. Reguli's Petition, the trial court primarily focused upon the seeming falsity of Ms. Reguli's statement in her Petition related to the Sixth Circuit's decision and Ms. Reguli having sought records related to the County's expenditures on Mr. Cruz's criminal defense. With regard to the former, the trial court indicated that Ms. Reguli appeared to have falsely represented the Sixth Circuit's decision. With regard to the latter, the trial court observed that there were no public records as to the County's expenditures upon Mr. Cruz's criminal defense because the County had not paid for his criminal defense.

The County cross examined Ms. Reguli during this hearing. Much of the County's questioning focused on her comments to County elected officials both publicly and privately in opposition to the County paying for Mr. Cruz's defense in the civil suits against him. Ms. Reguli and the mother of Mr. Cruz's alleged victim, J.H., believed that these expenditures by the County were an improper and unwarranted allocation of public funds. The County also inquired about whether Ms. Reguli had been making documents under seal publicly available. In the context of this hearing upon Ms. Reguli's Petition, the purpose of the County's questions appeared to be focused on establishing the need for delay in releasing the public records. In its Answer, the County had sought delay to allow the federal court to consider Mr. Cruz's motion for a protective order. The theory undergirding the County's questions appeared to be that delay was needed because Ms. Reguli could not be relied upon to honor a later issuance of a protective order by the federal court. The trial court questioned Ms. Reguli in relation to her failure to review the complete original record from the criminal case prior to those records having been expunged. The trial court

---

[2] Ms. Reguli had qualified to run as a candidate in the Republican Primary for Williamson County Juvenile Court Judge in the spring of 2022.

suggested that Ms. Reguli should have familiarized herself fully with the original records from the criminal case prior to the records being expunged. Ms. Reguli conceded that she had not done so.

Regarding her reliance on the Sixth Circuit opinion, Ms. Reguli insisted that she had not relied upon the case as a fundamental predicate for her petition. Instead, Ms. Reguli explained, she merely intended to provide a summary statement of the case. Additionally, concerning the County's allegation that any remaining, unproduced records were protected by attorney-client privilege, Ms. Reguli argued that while communications are protected by the privilege, the underlying facts of a particular communication are not equally protected. Ms. Reguli argued that billing statements, for example, would not be protected by attorney-client privilege.

Following the hearing, the trial court issued an Order providing written notice of potential Rule 11 violations to Ms. Reguli in connection with the filing of her Petition. Therein, the trial court stated that Ms. Reguli appeared to be involved in a public campaign to argue to the County's elected officials and voters that the County should not provide funding for Mr. Cruz's defense. The trial court indicated that failure to fund Mr. Cruz's defense would be contrary to the true interests of the County while being favorable to Ms. Reguli's client J.H. Additionally, the trial court expressed concerns about deceptive public statements from Ms. Reguli regarding the defense of Mr. Cruz that could taint a jury pool and undermine the County's actual interests. In addressing potential Rule 11 violations, the trial court also noted that Ms. Reguli's Petition appeared to contain a false statement in setting forth the finding of the Sixth Circuit in J.H.'s litigation. The trial court observed that what Ms. Reguli said was a finding of the Sixth Circuit in J.H.'s case was not actually the Sixth Circuit's finding. Furthermore, the trial court indicated that there were no records as to the County's funding Mr. Cruz's criminal defense because the County had not funded Mr. Cruz's criminal defense. The trial court stated that this reality could have been discovered by a reasonable inquiry prior to filing her Petition. Finally, the trial court set a hearing date related to addressing whether Ms. Reguli had violated Rule 11 and, if so, to determine appropriate sanctions.

In the same Order, the trial court also addressed the substance of Ms. Reguli's Petition. The trial court found the County's argument for delay persuasive. In ruling in the County's favor, the trial court stated the following:

> [T]he objection raised by the County to the immediate release of the records is SUSTAINED, pending a ruling on the motion for a protective order currently pending before the United States District Court for the Middle District of Tennessee, after which time the County shall make the records available to the extent of the protective order.

In the wake of the trial court sustaining the County's request for delay in order to

allow the federal court to rule upon Mr. Cruz's protective order motion and the trial court providing notice to Ms. Reguli of potential Rule 11 violations, Ms. Reguli sought recusal of the trial court judge. She filed multiple documents in connection therewith. Ms. Reguli submitted her first recusal motion on April 11, 2022. This motion was based upon the trial court judge having previously recused himself in a criminal case in which Ms. Reguli was the defendant without offering an explanation. Mr. Reguli had been aware of Judge Woodruff's prior recusal. Despite her awareness, Ms. Reguli had proceeded forward without seeking Judge Woodruff's recusal until after the judge ruled in favor the County's argument for delay in relation to her Public Records Act Petition and after the judge indicated that her Petition potentially violated Rule 11. Ms. Reguli also suggested in this motion that Judge Woodruff was aware of her entry into the Republican Primary for Juvenile Court judge, and that her political ambitions might also provide a reason for recusal. Ms. Reguli also used this motion as a vehicle to further develop her arguments related to her original public records request, specifically arguing that there is not a "bad faith" exception to the Tennessee Public Records Act. In her motion to recuse, Ms. Reguli sought as relief (1) the trial court judge disclosing his reasoning and judicial deliberation regarding recusal in Ms. Reguli's criminal case, (2) the trial judge recusing in this case, and (3) the trial court setting aside the March 2022 order in which the judge had put Ms. Reguli on notice regarding potential Rule 11 sanctions.

The trial court entered an order denying Ms. Reguli's motion for recusal on April 20, 2022. In doing so, the judge noted that a recusal motion is not the proper vehicle to request that an order be set aside; rather, Ms. Reguli should have filed a motion to alter or amend in accordance with the Tennessee Rules of Civil Procedure. Addressing her argument for recusal, the trial court further noted that Rule of Judicial Conduct 2.11(A) provides a non-exclusive list of reasons for a trial court judge to recuse. This point from the trial court was made in response to a presumption set forth in Ms. Reguli's motion for recusal. Ms. Reguli had asserted that, because the trial court judge recused himself from the criminal case without stating a reason for doing so, it should be presumed that the reason for his recusal must be personal bias or prejudice against her. In response, the trial court stated that "[f]or Ms. Reguli to pick one item off that non-exclusive list, and conclude it must be the reason for the court's action, is a leap of logic that lands nowhere." Additionally, Judge Woodruff concluded that he was not required to disclose his reason for recusal in the criminal case, and indicated that the reason for recusal in the criminal case did not warrant recusal in the present matter. Additionally, the trial court also found Ms. Reguli's motion for recusal to be untimely and subject to denial on that basis.

After the denial of her motion to recuse, Ms. Reguli filed two additional documents related to recusal, both of which she styled as declarations. On April 22, 2022, Ms. Reguli filed a declaration in support of her previous motion for recusal. In her declaration, Ms. Reguli stated that she observed Judge Woodruff in the courtroom at her criminal trial for facilitation of custodial interference and two counts of accessory after the fact, *see State v. Reguli*, No. M2022-00143-CCA-R3-CD, 2024 WL 913212 (Tenn. Crim. App. Mar. 4,

- 8 -

2024), during portions of the proceedings on April 19 and 20. In addition, Ms. Reguli asserted that the trial court judge opened an email sent to him from Ms. Reguli's campaign, which she indicated was sent to all registered Republican voters in Williamson County. The trial court judge had previously noted receipt of a campaign mailer from Ms. Reguli bringing it to the attention of the parties at an earlier hearing and indicating that he did not think that it warranted recusal. No contemporaneous concerns related to recusal were raised by either Ms. Reguli or the County. In her later filing, Ms. Reguli asserts that the trial court judge should have excluded himself from Ms. Reguli's campaign emails by utilizing the unsubscribe option on the email. Ms. Reguli filed a second declaration on April 23, 2022, again in support of recusal. In the second declaration, Ms. Reguli pointed to comments made by an adult son of the trial court judge about the upcoming Rule 11 hearing scheduled for April 26, 2022. She suggested that the trial court judge was improperly providing information to his son.

The trial court understood the first declaration to functionally be a motion to alter or amend under Tennessee Rule of Civil Procedure 59.04. The trial court reached this conclusion because the first declaration focused on recusal on the same basis as the initial recusal motion, which had been denied for the reasons set forth above. The trial court viewed the second declaration as functionally constituting a new motion for recusal because it did not share the same focus as the April 11, 2022 motion for recusal.

The trial court noted two procedural failings with regard to what it considered to be a second motion for recusal. Notably, "[t]he Second Declaration does not contain any of the required assurances of good faith and purpose required by Section 1.01 of Rule 10B. Moreover, it is filed less than ten days before the next scheduled hearing in this case which is the Rule 11.03 show cause hearing set for Tuesday, April 26, 2022." The trial court also addressed the merits of Ms. Reguli's argument for recusal, which the judge found to be lacking. The trial court judge acknowledged his presence in the courtroom at Ms. Reguli's criminal trial. The judge stated that he went to the trial for two purposes: (1) to see how the timing of the trial was progressing because he would also be presiding over a companion case and (2) to hear the verdict announced by the jury. The trial court judge indicated the comments his son made were all related to information found in public records. The trial court judge noted that the information was readily available from public sources, including newspaper articles, the Tennessee Board of Professional Responsibility website, and the clerk's office. The trial court found that "[f]or Ms. Reguli to conclude, as she does, that [the judge's son] received non-public information about the upcoming Rule 11 hearing from the undersigned is an inference with no factual support." The trial court determined that none of the reasons advanced by Ms. Reguli required recusal and, therefore, denied recusal again.

Between the trial court's March hearing on Ms. Reguli's Petition and its April hearing related to Rule 11 sanctions, the federal court overseeing the Federal Civil Rights Case issued an order denying Mr. Cruz's motion for a protective order. The federal court

did, however, conclude that Ms. Reguli had been violating Local Rule 83.04 of the United States District Court for the Middle District of Tennessee[3] through her extrajudicial statements about Mr. Cruz. The federal court admonished Ms. Reguli, as Mr. Cruz had requested, for her extrajudicial statements in violation of Local Rule 83.04 and ordered Ms. Reguli to abide thereby going forward. In accordance with Local Rule 83.04, the federal

---

[3] LR83.04 − RELEASE OF INFORMATION CONCERNING CIVIL PROCEEDINGS

(a) By Attorneys Concerning Civil Proceedings.

(1) Limitation on Extrajudicial Statements. A lawyer who is participating in or has participated in the investigation or litigation of a matter, either directly or indirectly, must not make any extrajudicial statement (other than a quotation from or reference to public records) that the lawyer knows or reasonably should know will be disseminated by public communication and will have substantial likelihood of materially prejudicing an adjudicative proceeding in the matter, including especially that will interfere with a fair trial.

(2) Comments More Likely Than Not to Have Material Prejudicial Effect. Comment relating to the following matters is more likely than not to have a material prejudicial effect on a proceeding, and the burden is upon the person commenting upon such matters to show that the comment did not pose such a threat:

(A) Evidence regarding the occurrence or transaction involved;
(B) The character, credibility, or criminal record of a party, witness, or prospective witness; or
(C) The performance or results of any examinations or tests or the refusal or failure of a party to submit to an examination or test.
(D) Information that the lawyer knows or reasonably should know is likely to be inadmissible as evidence at trial or that would, if disclosed, create a substantial risk of prejudicing an impartial trial.

(3) Optional Lawyer Statement. Notwithstanding paragraph (a), a lawyer may make a statement that a reasonable lawyer would believe is required to protect a client from the substantial undue prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client. A statement made pursuant to this paragraph must be limited to such information as is necessary to mitigate the recent adverse publicity.

(4) Application to Law Firms and Agencies. The provisions of this rule concerning lawyers apply to the law firm and government agencies or offices, and the partners and employees of such firms, government agencies or offices, with which the lawyer is associated.

(b) Provision for Special Orders in Widely Publicized and Sensational Cases. In widely publicized cases the Court, on motion of either party or on its own motion, may issue a special order governing such matters as extrajudicial statements by parties and witnesses likely to interfere with the rights of a party to a fair trial by an impartial jury, the seating and conduct in the courtroom of spectators and news media representatives, the management and sequestration of jurors and witnesses, and any other matters that the Court may deem appropriate for inclusion in such an order.

court directed Ms. Reguli to desist in public comments from referring to Mr. Cruz as a "pedo," "pedophile," "rapist," and "pervert." Ms. Reguli was also directed to desist in publicly commenting on the evidence in J.H.'s civil suit against Mr. Cruz.

Addressing the federal court's decision during the course of the hearing on the possible Rule 11 violations and sanctions, the County represented to the trial court the following: "[W]e have taken the position that the Protective Order has been resolved and therefore, we have, pursuant to statute, sent Ms. Reguli a letter saying we can redact those records and provide them within 30 days, if she pays the cost as per statute." In other words, the legal basis for the County's opposition to providing redacted versions of the public records requested by Ms. Reguli had been eliminated as a result of the federal court's decision. The trial court expressly agreed that the County's approach in the wake of the federal court decision as to the motion for a protective order was in accordance with its prior Order following the hearing upon Ms. Reguli's Petition.

The trial court afforded the parties an opportunity at the April hearing on the potential Rule 11 violations and sanctions to present further evidence and argument. The additional evidence presented was less substantial than the testimony at the initial March hearing, addressed above. At the direction of the trial court, the County also presented evidence as to its costs of addressing Ms. Reguli's Public Records request. The trial court also questioned Ms. Reguli regarding past Rule 11 sanctions imposed upon her and whether she had complied with the terms thereof.

After the hearing, the trial court ultimately concluded that Ms. Reguli had violated Rule 11 and imposed sanctions. The trial court found that Ms. Reguli filed the Petition for an improper purpose, made false allegations, and did not conduct a reasonable investigation into the veracity of her assertion that the County had paid for Mr. Cruz's criminal legal defense. Among the critical findings of the trial court were the following:

. . .

2. The Petition was presented in part for the improper purpose of (i) harassing the Williamson County Government, and one or more public officials including the sitting juvenile court judge, and (ii) pressuring Williamson County to cease or deny further payments for insurance defense counsel currently being provided to Juan Cruz, under a reservation of rights, and (iii) thereby obtaining an unfair advantage over the County in the pending state court civil action, Betty H[.], as Conservator of J. H. v. Williamson County & Juan Cruz, Williamson County Circuit Court, Case No. 2014-CV-588.

3. The Court understands Ms. Reguli's legal argument that the "improper purpose" prohibition of Rule 11.02(1) applies only to purposes directly

impacting the specific litigation in which the alleged offending conduct occurred, and does not extend to improper purposes impacting ancillary litigation between the same parties. The Court, however, respectfully disagrees with Ms. Reguli's legal argument. The Court's disagreement is based, in part on the rule's use of the expansive phrase "*any* improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost *of litigation*." Tenn. R. Civ. P. 11.02(1) (emphasis added). Had the drafters intended to circumscribe the reach of Rule 11.02(1) to the specific litigation in which the offending conduct took place, and thus exclude consideration of any ripple effect of the offending conduct, they would have written the rule differently.

. . .

5. The Court finds that the Petition contains false allegations and other factual contentions, specifically (i) that the 6th Circuit Court of Appeals "found" that "holding J.H. in solitary confinement was excessive punishment and violated his constitutional rights as a pre-trial detainee" and (ii) that Williamson County appropriated funds used to pay for the criminal defense of Juan Cruz.

6. With respect to the untrue allegation about the 6th Circuit making a finding regarding J.H. being held in solitary confinement in violation of his rights, Ms. Reguli compounded her Rule 11.02 violation by fabricating a materially misleading exhibit to the Petition. This exhibit was deceptively composed for the purpose of ostensibly corroborating the untrue allegation.

7. With respect to the allegation that Williamson County paid for the criminal defense of Juan Cruz, Ms. Reguli had six years available to her, within which even the most rudimentary, informal investigation would have disclosed that the allegation had no evidentiary support.

Addressing what would constitute an adequate informal investigation of the funding of Mr. Cruz's criminal defense, the trial court suggested Ms. Reguli should have familiarized herself with the original criminal file prior to its expungement, inquired informally of the firm that represents the County, and examined the County budget.

Having concluded that Ms. Reguli violated Rule 11, the trial court imposed sanctions. The trial court imposed three distinct sanctions. For the first sanction, the trial court dismissed Ms. Reguli's Public Records Act Petition with prejudice. The County had conceded, and the trial court confirmed, that Ms. Reguli would have been entitled to the redacted records upon paying the costs under the terms of the trial court's previous Order prior to this dismissal. For the second sanction, the trial court noted that because the County had not sought Rule 11 sanctions that it could not reimburse the County for any

legal expenses. The trial court instead imposed what it characterized as a "financial penalty." Relying on the County's testimony from the Rule 11 hearing regarding its costs incurred in response to Ms. Reguli's Petition as a benchmark, the trial court ordered Ms. Reguli "to pay a penalty to the Chancery Court of Williamson County, Tennessee in the total amount of $5,000." The trial court explained its reasoning for imposing this penalty as follows:

> Ms. Reguli was sanctioned previously in other litigation, for violations of Rule 11.02. She testified in this hearing, under oath, that she has complied fully with the sanctions imposed on her by this Court in December 2014. The County elected not to present any testimony in rebuttal. Therefore, the Court relies on Ms. Reguli's testimony that she has fully performed those previously imposed sanctions of (i) additional ethics education, and (ii) reimbursement to CASA of its reasonable attorney fees in the amount of $3,145.50. Based on Ms. Reguli's testimony, the Court finds that the imposition of earlier sanctions failed to achieve the purpose of Rule 11.03; which is to deter repetition of comparable conduct. Either the earlier sanctions were insufficient or Ms. Reguli is impervious to correction. Therefore, the Court finds that greater, more robust sanctions are justified; had Ms. Reguli not complied with those earlier sanctions, the Court's sanctions today would by necessity be even greater.

As for the third sanction, the trial court ordered that "upon entry of this order, in all civil actions in the 21st Judicial District in which Ms. Reguli is a self-represented party, Ms. Reguli shall engage, at her expense, associate counsel, licensed to practice law in Tennessee, for the limited purpose of ensuring compliance with Rule 11.02."

Ms. Reguli filed a motion to alter or amend the trial court's Order imposing sanctions, and she set the motion for a hearing. However, Ms. Reguli did not follow the procedure set forth in the Local Rules for Twenty-First Judicial District, which provide that it is in a trial court judge's discretion to set any hearings on motions to alter or amend, and instead set a hearing on her motion unilaterally. The trial court denied Ms. Reguli's motion. In doing so, the trial rejected her arguments and declined to afford Ms. Reguli, who had failed to comply with the Local Rules, a hearing upon her motion.

Ms. Reguli appeals from the trial court's imposition of sanctions for violations of Rule 11. On appeal before this court, Ms. Reguli asserts that the trial court erred by (1) failing to recuse, (2) issuing Rule 11 sanctions for conduct that Ms. Reguli argues did not violate Rule 11, (3) dismissing her Public Records Act Petition, (4) by imposing fines that violate the United States and Tennessee Constitutions, (5) by imposing sanctions that deny her access to the Courts, and (6) by denying her motion to alter or amend without holding a hearing thereupon. The County contends that the trial court did not err and argues in support of the trial court's declining to recuse as well as its imposition of sanctions.

- 13 -

## II.

This court reviews a trial court's ruling as to Rule 11 sanctions "under an abuse of discretion standard." *In re Est. of Rogers*, 562 S.W.3d 409, 428 (Tenn. Ct. App. 2018) (quoting *Brown v. Shappley*, 290 S.W.3d 197, 200 (Tenn. Ct. App. 2008)). Appellate courts will set aside a discretionary decision by a trial court "only when the court that made the decision applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008). A trial court "abuses its discretion if it 'strays beyond the applicable legal standards.'" *Ewan v. Hardison L. Firm*, 465 S.W.3d 124, 139 (Tenn. Ct. App. 2014) (quoting *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). This court reviews the trial court's findings of fact with a presumption of correctness. Tenn. R. App. P. 13(d). We review determinations as to questions of law de novo with no presumption of correctness. *Ewan*, 465 S.W.3d at 139; *Buckley v. Carlock*, 652 S.W.3d 432, 440 (Tenn. Ct. App. 2022).

## III.

On appeal, Ms. Reguli argues the trial court judge should have recused himself. In reviewing Ms. Reguli's briefing on this matter, there are multiple deficiencies in Ms. Reguli's arguments. The most foundational problem is that Ms. Reguli has failed to develop and support an argument in opposition to the procedural grounds noted by the trial court in denying her motions to recuse. The trial court found procedural defects with both motions including untimeliness as to the first motion and defects as to the required assurances of good faith and purpose as well as improper timing of her second motion. While these were not the only bases for the trial court's ruling, having also found her contentions to be lacking on the merits, they are an independent bases for the trial court's decision.

> This court has previously confronted circumstances in which a trial court's ruling is supported by alternative independent bases but not all of those bases have been challenged on appeal. In such circumstances, we have explained that
>
>> [g]enerally, where a trial court provides more than one basis for its ruling, the appellant must appeal all the alternative grounds for the ruling. *See* 5 Am. Jur. 2d Appellate Review § 718 ("[W]here a separate and independent ground from the one appealed supports the judgment made below, and is not challenged on appeal, the appellate court must affirm."); *see also Tower Oaks Blvd., LLC v. Procida*, 219 Md. App. 376,

- 14 -

392, 100 A.3d 1255, 1265 (Md. 2014) ("The law of appellate review establishes that, '[w]hen a separate and independent ground that supports a judgment is not challenged on appeal, the appellate court must affirm.'") (citation omitted); *Prater v. State Farm Lloyds*, 217 S.W.3d 739, 740-41 (Tex. App. 2007) ("When a separate and independent ground that supports a ruling is not challenged on appeal, we must affirm the lower court's ruling."); *Johnson v. Commonwealth of Virginia*, 45 Va. App. 113, 116, 609 S.E.2d 58, 60 (Va. 2005) ("[W]e join the majority of jurisdictions holding that in 'situations in which there is one or more alternative holdings on an issue,' the appellant's 'failure to address one of the holdings results in a waiver of any claim of error with respect to the court's decision on that issue.'") (citation omitted).

*Ramos v. Caldwell*, No. M-2022-00222-COA-R3-CV, 2023 WL 1776243, at *3-4 (Tenn. Ct. App. Feb. 6, 2023) (quoting *Hatfield v. Allenbrooke Nursing & Rehab. Ctr., LLC*, No. W2017-00957-COA-R3-CV, 2018 WL 3740565, at *7 (Tenn. Ct. App. Aug. 6, 2018)).

Ms. Reguli fails to develop and support an argument that the trial court erred with regard to the procedural bases of its decision. Where an independent alternative ground for the ruling is unchallenged on appeal, a reasonable course for an appellate court is simply to affirm the trial court's ruling. *See Ramos*, 2023 WL 1776243, at *4. That is precisely what we do in the present case, affirming the trial court's denial of Ms. Reguli's motions to recuse.

IV.

There are two core actions by Ms. Reguli that the trial court found to be in contravention of Rule 11.02 of the Tennessee Rules of Civil Procedure and warranting of sanctions. One action relates to a false statement in her Public Records Act Petition and a related deceptive exhibit attached to her Petition. The second core action that formed a basis for sanction is Ms. Reguli's act of filing a Petition seeking public records. The trial court concluded that the Petition was filed with inadequate inquiry having been done prior to filing and that the Petition was filed for an improper purpose in relation to how Ms. Reguli would make improper use of any public records she obtained. Ms. Reguli argues that the trial court erred; she contends her actions were not sanctionable under Rule 11. The County argues in support of the trial court's conclusion that Ms. Reguli's conduct was properly subject to sanction.

A.

We turn first to the trial court's finding of sanctionable conduct in relation to Ms.

- 15 -

Reguli's assertion of a false statement in her Petition and the accompanying deceptive exhibit. The trial court concluded that Ms. Reguli made a false statement in her Petition by falsely representing a Sixth Circuit decision involving J.H. Furthermore, the trial court concluded that Ms. Reguli crafted an exhibit to her Petition in which she edited the slip opinion of the Sixth Circuit in such a manner as to create a misleading impression of the decision that was supportive of her false characterization. It is clear from the trial court's decision that it did not regard Ms. Reguli's characterization of the Sixth Circuit's decision as reflecting a permissible lawyerly construction of the Sixth Circuit's opinion or even a simple misunderstanding of the decision by Ms. Reguli. To the contrary, it is apparent that the trial court regarded her actions as purposefully misrepresenting the Sixth Circuit's decision. We note that the trial court expressly concluded that the exhibit in support of the false statement was "deceptively composed."

Ms. Reguli argues the trial court erred in determining that she violated Tennessee Rule of Civil Procedure 11.02(3) by making a false statement regarding the Sixth Circuit's decision and by crafting a misleading exhibit in furtherance of the false statement in her Petition. Ms. Reguli argues that the allegedly false statement regarding the Sixth Circuit decision was not, in fact, false but instead a reasonable interpretation of the opinion. She further contends that the purportedly false statement that caused concern for the trial court was immaterial and that the trial court judge erred by determining the false statement was a "fundamental predicate" of her petition.

We begin with the latter argument. Ms. Reguli argues on appeal that the trial court "ruled that the sentence in question was used as a 'fundamental predicate' of the petition." She argues "[t]his is an error of law." Ms. Reguli proceeds in her appellate brief to address the meaning of the term "fundamental predicate" and to contend that the reference to the Sixth Circuit decision was not actually a "fundamental predicate" for her petition. Accordingly, she contends the trial court erred in ruling that her statement was a "fundamental predicate."

Our review of the record reveals, however, that the "fundamental predicate" language which is characterized by Ms. Reguli as a ruling of the trial court appeared not as part of the trial court's ruling but instead in a question the trial court judge asked Ms. Reguli regarding the purpose of why she placed a false statement regarding the Sixth Circuit decision in her Petition. The trial court judge asked Ms. Reguli the following:

So coming back to that statement in paragraph one of the petition, I take it from reading the petition that that establishes sort of a fundamental predicate for the purposes of this request; am I right about that?

After Ms. Reguli disagreed with this description, the trial court judge noted that she had put the statement regarding the Sixth Circuit opinion into her Petition for "some purpose."

- 16 -

The irony is not lost on us that, as part of her argument the trial court erred by concluding she misrepresented a decision of the Sixth Circuit, Ms. Reguli represented to this court that language employed in a question from the trial court judge during a hearing was instead a ruling of the trial court. Given that the trial court did not actually rule that her statement was a "fundamental predicate" to her petition, the trial court certainly did not err by ruling that her statement was a "fundamental predicate" to her petition.

The trial court did, however, determine that the exhibit that Ms. Reguli prepared was "materially misleading," a conclusion to which Ms. Reguli objects. She asserts that the Sixth Circuit's decision was of no consequence to her public records Petition. She argues, therefore, that the trial court erred in characterizing her purported misrepresentation as material. In Ms. Reguli's view, Rule 11 is inapplicable because her allegedly false statement was not a false statement as to a matter material to determining whether her Petition under the Public Records Act should be granted. Ms. Reguli, however, provides no authority to support her proposition that a knowingly false statement in a filing before a trial court that is not material does not violate Rule 11. She has implicitly left the researching and exploration of this legal question *entirely* to this court; we decline the invitation and instead conclude that this argument is waived. *See Sneed v. Bd. of Prof'l Responsibility of Supreme Court*, 301 S.W.3d 603, 615 (Tenn. 2010) ("It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived.").[4]

Ms. Reguli argues that her interpretation of the Sixth Circuit's decision was reasonable and that there was nothing improper with regard to her characterization of the decision. To avoid losing the context of her statement in which she addressed a decision of the Sixth Circuit in a case she had litigated, we produce the entirety of the paragraph in which the sentence at issue appears, placing emphasis on the disputed sentence:

1. The petitioner, Connie Reguli, is a citizen of Williamson County and an attorney licensed to practice law in the State of Tennessee. I am also the attorney of record for J.H. who is the plaintiff in two civil lawsuits. Case

---

[4] While we conclude that this issue has been waived, we do note that Rule 3.3 of the Tennessee Rules of Professional Conduct provides a possible corollary of interest with regard to this Rule 11 question. For ex parte proceedings, "[a] lawyer shall not knowingly . . . fail to inform the tribunal of all *material* facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse." Tenn. Sup. Ct. R. 8, RPC 3.3(a)(3) (emphasis added). However, Rule 3.3 also provides that "[a] lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal." Tenn. Sup. Ct. R. 8, RPC 3.3(a)(1). With regard to false statements of fact or law to a tribunal, Rule 3.3 does not expressly limit the prohibition to material false statements of fact or law as it does with regard to the disclosure of facts in an ex parte proceeding where no false statement of fact or law has been made. Thus, textually, Tennessee Rule of Professional Conducts 3.3 does not require materiality where a lawyer knowingly makes a false statement of fact or law to a tribunal in order for a lawyer to run afoul of Rule 3.3 of the Rules of Professional Conduct.

3:14-2356 is a federal civil rights action and Case 2014CV- 588 is a state court tort case. In both cases, Williamson County was a named defendant but has been released from the cases on separate grounds. These cases arose from the abusive and neglectful treatment of J.H. in the Williamson County detention center in the winter of 2013. Fourteen-year-old J.H. was placed in solitary confinement and was assaulted by a Williamson County employee. *The Sixth Circuit Court found that holding J.H. in solitary confinement was excessive punishment and violated his constitutional right as a pre-trial detainee.* The perpetrator of the assault was Juan Cruz, a Williamson County employee.

The context in which the case arose before the Sixth Circuit was an appeal of a partial grant of summary judgment awarded by a federal district court. *J.H. v. Williamson Cnty., Tenn.*, 951 F.3d 709, 715-16 (6th Cir. 2020). In considering the appeal, the Sixth Circuit noted that "[u]nder the first prong of our qualified immunity analysis, we ask 'whether [J.H.]'s allegations, *if true*, establish a constitutional violation.'" *Id.* at 717 (emphasis in original). In setting forth its holding, the Sixth Circuit expressly returned to this qualification of its decision: "We therefore hold that, *assuming J.H.'s allegations to be true*, his Fourteenth Amendment substantive due process rights were violated when he was held in solitary confinement from November 17 to December 8, 2013." *Id.* at 720 (emphasis added).

In referencing this decision, Ms. Reguli did not in her Petition or as exhibit thereto provide the published opinion of the Sixth Circuit or a citation to the Sixth Circuit's opinion. Ms. Reguli instead created an exhibit in which she provided four pages drawn from the slip opinion rather than the published opinion. The pages provided by Ms. Reguli did not include language indicating that the appeal before the Sixth Circuit was taken in the context of a partial summary judgment awarded by a federal district court to a number of the defendants in the case. The pages provided did not include portions of the opinion indicating that the Sixth Circuit had ultimately upheld the grant of partial summary judgment to these defendants. The pages provided did not include the Sixth Circuit's express indication that its analysis was addressed to answering the legal questions presented *if* the facts asserted by J.H. were *true*. The pages provided in the exhibit also did not include the Sixth Circuit's express indication that its holding was predicated upon "assuming J.H.'s allegations to be true." Reviewing the exhibit Ms. Reguli provided, we see no possible way for the trial court to be able to glean directly from the exhibit itself the existence of critical limitations on the Sixth Circuit's decision that run contrary to Ms. Reguli's characterization thereof. Additionally, the sentence in which the Sixth Circuit expressly sets forth its "holding" with such limitation begins a mere ten words after the final portion of the opinion provided by Ms. Reguli as an exhibit to the trial court cuts off. Furthermore, in the published opinion in the Federal Reporter, 951 F.3d 709 (6th Cir. 2020), the above referenced "*if true*" limitation appears on page 717 which also includes portions of the opinion that Ms. Reguli did provide as part of her exhibit. However, with

using the slip opinion instead, the "*if true*" limitation language appears on another page from the content Ms. Reguli provided in support of her description of the Sixth Circuit's decision. In other words, by using the slip opinion rather than the published version, Ms. Reguli's exhibit supported her characterization of the Sixth Circuit's decision by avoiding revealing this critical limitation.

As noted above, the trial court judge concluded that Ms. Reguli made a false statement in her representation of the Sixth Circuit's decision in J.H.'s case and presented an exhibit that she crafted in a deceptive manner to further this false statement. Ms. Reguli insists that her reading was reasonable. We cannot agree with Ms. Reguli that she simply presented a reasonable reading of the Sixth Circuit's decision of a case that she had litigated. The Sixth Circuit did not, in fact, find that J.H.'s constitutional rights were violated. The Sixth Circuit found that **if** the facts were as J.H. alleged, which had not yet been determined and was disputed, then J.H.'s constitutional rights were violated. Hearing testimony and considering the matter before it, the trial court determined Ms. Reguli's actions were deceptive. In other words, the trial court did not find the statement in the Petition to be a simple mistake or even aggressive lawyering within professional bounds. From our review of the record, we conclude that the trial court did not err in its conclusion that Ms. Reguli set forth in her Petition a false statement or in its conclusion that the exhibit was crafted in such a manner to deceptively advance this false statement. We find no error in the trial court's conclusion that these actions violated Rule 11.

B.

While the first core action forming a basis for sanctions in the present case related to the above-discussed false statement, the second core action that the trial court found sanctionable emerged from the act of Ms. Reguli filing the Petition at all. The trial court concluded that Ms. Reguli did not make an adequate inquiry before filing and the Petition had an improper purpose. Her sanctionable action was the act of filing the Petition under these circumstances.

A foundational dispute between the County, arguing in support of the trial court judge's imposition of sanctions, and Ms. Reguli, arguing in opposition thereto, relates to whether the context of this case is of consequence. The County argues that this court should essentially ignore that the Petition, the act of filing which gave rise to Rule 11 sanctions, is a Public Records Act Petition. Ms. Reguli counters that the fact that the Petition, the filing of which has led to her being sanctioned, is a Public Records Act Petition is critical to understanding why the trial court was in error in sanctioning her in the present case.

With regard to the false statement issue addressed above, it is of no consequence that the false statement was made in the context of a petition under the Public Records Act, rather than, for example, a tort or property suit or any number of other types of actions.

- 19 -

Lawyers are not free to knowingly make false statements in their filings to the trial court simply because the statement is made in a petition under the Public Records Act. An assertion to the contrary is nonsensical. However, with regard to sanctions related to the reasonableness of her inquiry prior to filing and her likely use of any public records she acquires as the bases for sanction, Ms. Reguli has the better argument. The sanctions emerging from the act of filing of the Petition itself, given the sanctionable aspects identified by the trial court and the circumstances of the present case, are inseparable from the context of the filing being a Public Records Act Petition. It is that context and the complexity generated thereby that reveals and forms the basis for the trial court's error in sanctioning Ms. Reguli for the filing of her Petition.

Accordingly, we turn to consider that context. Long before the General Assembly enacted the Public Records Act, the Tennessee Supreme Court concluded that there existed a right of the public to access government papers. *See State ex rel. Wellford v. Williams*, 110 Tenn. 549, 75 S.W. 948, 958-59 (1903); *see also Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996) (declaring that "it is beyond dispute that there exists in this country a general right to inspect and copy public records and documents"); *Swift v. Campbell*, 159 S.W.3d 565, 570 (Tenn. Ct. App. 2004) (noting that "Tennessee's courts have long recognized the public's right to examine governmental records"). The Tennessee General Assembly in 1957 "codified this public access doctrine by enacting the Public Records Act." *Schneider v. City of Jackson*, 226 S.W.3d 332, 339 (Tenn. 2007).

"Public records under the Act are defined broadly. . . ." *Tennessean v. Metro. Gov't of Nashville*, 485 S.W.3d 857, 864 (Tenn. 2016). The Public Records Act defines public records as "all documents, papers, letters, maps, books, photographs, microfilms, electronic data processing files and output, films, sound recordings, or other material, regardless of physical form or characteristics, made or received pursuant to law or ordinance or in connection with the transaction of official business by any governmental agency." Tenn. Code Ann. § 10-7-503(a)(1)(A)(i) (effective May 4, 2021 to June 30, 2022); *see also Griffin v. City of Knoxville*, 821 S.W.2d 921, 923 (Tenn. 1991) (describing the Act as an "all encompassing legislative attempt to cover all printed matter created or received by government in its official capacity" (quoting *Bd. of Ed. of Memphis City Sch. v. Memphis Pub. Co.*, 585 S.W.2d 629, 630 (Tenn. Ct. App. 1979))). With regard to the availability of public records, the Act provides that "[a]ll state, county and municipal records shall, at all times during business hours, . . . be open for personal inspection by any citizen of this state, and those in charge of the records shall not refuse such right of inspection to any citizen of this state, . . . unless otherwise provided by state law." Tenn. Code Ann. § 10-7-503(a)(2)(A).

Addressing statutory measures of the Public Records Act, the Tennessee Supreme Court has indicated that they "create a presumption of openness and express a clear legislative mandate favoring disclosure of governmental records." *Schneider*, 226 S.W.3d at 339–40. This is not to say that there are no or even only a few exceptions under the Act.

To the contrary, while there were initially only two exceptions to the Act,[5] in a 2018 report, the Tennessee Comptroller of the Treasury's Office of Open Records Counsel reported to the General Assembly that there are 538 exceptions to the Public Records Act.[6] Despite a narrowing of records available under the Act, "its intent has remained the same—to facilitate the public's access to government records." *Tennessean*, 485 S.W.3d at 864. Reflecting upon the Act, the Tennessee Supreme Court has observed "[t]he Public Records Act has a noble and worthwhile purpose by providing a tool to hold government officials and agencies accountable to the citizens of Tennessee through oversight in government activities." *Id*. The Act still provides for "a presumption of openness for government records" and directs custodians of public records "to promptly provide for inspection of any public record not exempt from disclosure." *Id*.

The Public Records Act allows for inspection of public records by "any citizen of this state." Tenn. Code Ann. § 10-7-503(a)(2)(A). Where his or her request has been in whole or in part denied, "[a]ny citizen of Tennessee . . . shall be entitled to petition for access to any such record and to obtain judicial review of the actions taken to deny the access." Tenn. Code Ann. § 10-7-505(a). This court has indicated that a citizen's "motive or reason for wishing to review" a public record is "immaterial." *Kersey v. Bratcher*, 253 S.W.3d 625, 629 (Tenn. Ct. App. 2007). In the absence of express statutory limitations to the contrary, state courts in other jurisdictions, addressing their respective state's public records laws, share this understanding. *See*, *e.g.*, *Hopkins v. City of Brinkley*, 432 S.W.3d 609, 616 (Ark. 2014) (indicating that the Arkansas Freedom of Information Act "does not direct itself to the motivation of the person who seeks public records"); *Los Angeles Unified Sch. Dist. v. Superior Ct.*, 175 Cal. Rptr. 3d 90, 104 (Cal. Ct. App. 2014) ("The motive of the particular requester in seeking public records is irrelevant. . . . Moreover, the purpose for which the requested records are to be used is likewise irrelevant."); *Rameses, Inc. v. Demings*, 29 So. 3d 418, 421 (Fla. Dist. Ct. App. 2010) ("The motivation or purpose of the person seeking disclosure of public records is irrelevant."); *News-Press Publ'g Co. v. Gadd*, 388 So. 2d 276, 278 (Fla. Dist. Ct. App. 1980) ("The hospital's defense alleging malicious motives for seeking the documents is likewise irrelevant. The Public Records Act does not direct itself to the motivation of the person who seeks the records."); *Wade v. Taylor*, 320 P.3d 1250, 1260 (Idaho 2014) ("The purpose for which [the requester] sought the records is irrelevant in analyzing whether or not the records were exempt from disclosure."); *Censabella v. Hillsborough Cnty. Att'y*, 197 A.3d 74, 77 (N.H. 2018) ("The requester's motives in seeking disclosure are irrelevant to the question of access."); *Gray*

---

[5] "When the Act was adopted in 1957, only two categories of records were excepted from disclosure—medical records of patients in state hospitals and military records involving the security of the nation and state." *Tennessean*, 485 S.W.3d at 865.

[6] Tennessee Comptroller of the Treasury, *Statutory Exceptions to the Tennessee Public Records Act* 3 (2018), https://comptroller.tn.gov/content/dam/cot/orc/documents/oorc/2018-01-19_ExceptionstotheTennesseePublicRecordsActFinal.pdf; *see also* Andrew C. Fels, *Missing Footage: Reforming Tennessee's Law Enforcement Public Record Exception*, 53 U. MEM. L. REV. 375, 390 (2022).

*v. Salem-Keizer Sch. Dist.*, 912 P.2d 938, 943 (Or. Ct. App. 1996) (indicating that "an individual's purpose or motivation for seeking public records is generally immaterial to whether the documents are subject to disclosure"); *Weaver v. Dep't of Corr.*, 702 A.2d 370, 371 (Pa. Commw. Ct. 1997) ("[T]he right to examine a public record is not based on whether the person requesting the disclosure is affected by the records or if his or her motives are not pure in seeking them, but whether *any* person's rights are fixed."); *Springfield Terminal Ry. Co. v. Agency of Transp.*, 816 A.2d 448, 454 (Vt. 2002) (stating that "motive is irrelevant to the right of access under the Public Records Act"); *cf. Burt v. Wash. State Dep't of Corr.*, 231 P.3d 191, 196 n.9 (Wash. 2010) (considering motive of the requester but only in response to a statute that imposed an express limitation upon public records sought by inmates and where the records were sought for purposes of harassment of prison employees or their families).

We do raise one general note of caution before delving into the particulars of this matter in the present case. Application of Rule 11 sanctions to a requester of public records appears to be rare in state and federal courts. The Ohio Supreme Court, reflecting upon the prudent caution needed in such cases, stated that "courts must be very careful before imposing sanctions in a public-records case." *State ex rel. Bardwell v. Cuyahoga Cty. Bd. of Comm'rs*, 937 N.E.2d 1274, 1277 (Ohio 2010). The Court reasoned that "[i]mposition by a court of Civ. R. 11 sanctions upon a public-records requester in the absence of clear evidence that he or she acted willfully and in bad faith has the potential to chill public-records requests and reduce the transparency of government." *Id*. There are textual variances between Ohio Rule of Civil Procedure 11[7] and Tennessee Rule of Civil Procedure 11.02 that generate different standards, but the core point of the Ohio Supreme Court's analysis remains. That is, courts must be cautious in imposing Rule 11 sanctions upon citizens seeking public records to avoid chilling such requests and, thereby, reducing transparency in government. *See id*.

Turning to the particulars of the present case, insofar as she asked for public records as to County expenditures related to the criminal defense of Mr. Cruz, the trial court concluded that Ms. Reguli did not conduct an adequate inquiry prior to filing. The trial court concluded that if she had conducted an adequate inquiry Ms. Reguli would have learned that there were no such expenses prior to filing her Petition. The court found no such records existed because the County did not, in fact, pay for Mr. Cruz's criminal defense. With regard to the adequacy of her pre-Petition inquiry, we note that the County denied Ms. Reguli's public records request, but significantly, the County did not do so based upon the non-existence of such records but instead based upon another unrelated ground.

When denying a request for public records from a citizen of the State of Tennessee, Tennessee law requires that the custodian of the public records shall "[d]eny the request in

---

[7] Ohio Rule of Civil Procedure 11 imposes sanctions for a "[f]or a willful violation of this rule."

writing or by completing a records request response form developed by the office of open records counsel." Tenn. Code Ann. § 10-7-503(a)(2)(B)(ii). Whichever approach is taken, "[t]he response **shall** include the basis for the denial." *Id*. (emphasis added).

The County's stated basis for denial in a letter written to Ms. Reguli was, "We are currently unable to provide the requested information due to the motion for protective order filed in the Federal case. Please see attached denial form." On the form accompanying the denial letter, the marked basis for denial is "Your request has been denied pursuant to the following law: . . . Court Case: J.H., by Conservator Betty H[.] v. Williamson County, et al. Motion for protective order filed February 21, 2022. The request is denied until the motion for protective order is heard." In seeking a protective order in the Federal Civil Rights Case, Mr. Cruz had raised concerns regarding how Ms. Reguli may put public records to use. Ms. Reguli referenced this motion and included a copy thereof as an exhibit to her Petition. We note that despite referencing Ms. Reguli's public records Petition and raising concerns about Ms. Reguli's campaign against the County funding his defense, Mr. Cruz did not in his motion for protective order or supporting memorandum provide any indication that he did not receive funding from the County related to his criminal defense.

What is noticeably not marked on the form provided to Ms. Reguli from the County explaining the basis for denial of her request is the box appearing next to the reason "The records do not exist." In other words, the form sets forth among the potential bases for denial of public records that the records do not exist, along with other potential reasons, but that box was not marked by the County when fulfilling its statutory duty to set forth the basis for denial of Ms. Reguli's request. Accordingly, the County indicated that non-existence of the records was not the basis for denial of the records she requested. In addition to the form, there is no indication in the written denial letter sent to Ms. Reguli that the records she requested did not exist. Nor is there any indication in the letter or on the form that some records exist and others do not. To the contrary, the language of the form provided to Ms. Reguli is most reasonably read as indicating the records exist, but they cannot be provided *currently* because of the pending motion for a protective order. At a minimum, the County's communication indicates that non-existence of the records can be a basis for denial of private records requests in general but that it is not the basis of denial of Ms. Reguli's public records request. The first time the County actually informed Ms. Reguli that there were no such records because the County did not pay anything toward Mr. Cruz's criminal defense was in its Answer to her Petition. In the view of the trial court, Ms. Reguli's sanctionable conduct had already occurred by this point by filing her Petition.

Under the circumstances of the present case including the sanctioned conduct being the filing of a petition under the Public Records Act, we conclude that the trial court erred in finding that the deficiencies in Ms. Reguli's inquiry prior to filing were such that they rose to the level of being sanctionable. Under Rule 11.02, the inquiry required before filing must be "reasonable under the circumstances." Tenn. R. Civ. P. 11.02. There were a number of circumstances that gave rise to Ms. Reguli's inaccurate belief that the County

might have provided some measure of funding for Mr. Cruz's criminal defense. For one, her client J.H. sued the County civilly in connection with its employee Mr. Cruz's actions. Furthermore, Ms. Reguli noted that Mr. Cruz, who evidently was an individual of limited means, had three attorneys representing him concurrently for his criminal defense. She also observed that the attorneys who were involved in the representation in the civil matter were present in the courtroom during the criminal proceedings. In responding to Ms. Reguli, counsel for the County represented to the trial court that individuals involved in the civil representation of Mr. Cruz and the County, in fact, had been present in the courtroom during the criminal proceedings. Counsel for the County also indicated that "there was also the individual in the criminal case who assisted Mr. Cruz's retained criminal lawyer," but noted that this person "did not charge the County."

Regarding the inquiry that Ms. Reguli should have made, the trial court suggested Ms. Reguli should have, prior to filing her Petition, reviewed the full original file from the criminal case, examined the County budget, and also informally contacted the law firm that represents the County. While the file in Mr. Cruz's criminal case had been expunged, the trial court judge suggested that Ms. Reguli should have reviewed the public record files from the criminal case prior to expungement. Review prior to expungement of a record that was expunged prior to the public records request requires anticipation of a subsequent filing of a petition under the Public Records Act. We do not understand the Public Records Act to require a party to take anticipatory actions months or even years before a public records request so that he or she will know whether the public records actually exist with the potential consequence of failure to do so being Rule 11 sanctions.

In further addressing the inquiry that Ms. Reguli should have made, the trial court also suggested that Ms. Reguli should have contacted the law firm involved in representing the County to determine if any funds had been expended on Mr. Cruz's criminal defense by the County prior to filing her Petition. The firm, however, is the same firm that handles public records requests on behalf of the County and that had already responded to Ms. Reguli's public records request without indicating that the records as to County expenditures for Mr. Cruz's criminal defense did not exist. We further note that the record reflects some confusion as to the source of funding of Mr. Cruz's criminal defense. Counsel for the County represented in its filing before the trial court that "[t]o the best of [the] County's knowledge, Mr. Cruz retained and paid his criminal attorney" while the trial court seemed to be operating under an understanding that Mr. Cruz had been indigent with the State paying for his representation.

Ultimately, it is the denial letter and accompanying form that are key to our conclusion that the trial court erred with regard to imposing sanctions based upon failure to conduct a reasonable inquiry prior to filing her Petition. As noted above, the context of the Public Records Act is important in this case. Under the Public Records Act, there is a statutory duty upon the government to provide the basis for denial. Tenn. Code Ann. § 10-7-503(a)(2)(B)(ii). Citizens are, then, afforded a right to petition should their request for

public records be denied in whole or in part. Tenn. Code Ann. § 10-7-505(a). Where a citizen requesting a record is informed in her denial letter/form that non-existence of the records requested is a basis upon which a public records request could be denied in general but that is not the basis for denial of her request and instead the reason that her public records request is being denied is some other unrelated reason, the citizen is entitled to proceed in filing her statutorily authorized petition with an understanding that the basis of denial is what the government has asserted it to be and not what the government has not asserted it to be.[8] Absent the citizen knowing the records do not exist, where the custodian impliedly indicates the records exist and denial is instead on another basis, a citizen is not subject to sanctions under Rule 11 for failing to inquire further whether the records exist prior to filing a statutorily authorized petition under the Public Records Act. A contrary approach threatens to undermine the structure and operation of the Public Records Act, chilling the pursuit of public records and the transparency in government produced thereby.

The trial court's finding of sanctionable conduct was also predicated upon Ms. Reguli filing her petition for an "improper purpose" under Tennessee Rule of Civil Procedure 11.02(1). In reviewing the record and the trial court's order, there is a degree of uncertainty with regard to how precisely the trial court is applying the "improper purpose" limitation in the present case. We think the better understanding of the trial court's ruling, and the one that maintains a connection between the Petition, the filing of which Ms. Reguli is being punished for, and the "improper purpose" identified by the trial court,[9] is that the improper purpose is the anticipated improper use of the public records that Ms. Reguli would obtain if her Petition succeeded.

Read in this light, the trial court determined that Ms. Reguli, who was trying to obtain expenditure amounts paid by the County for Mr. Cruz's defense, would use this information to further her ongoing argument against the continued funding of Mr. Cruz's defense by the County. The testimony and exhibits presented to the trial court reflect that Ms. Reguli had previously complained publicly before elected bodies, in private conversations with elected officials, and before voters in her campaign for elective office about the County paying for Mr. Cruz's defense. She had done so without these records, and presumably would continue to do so with or without obtaining the expenditure records. Ms. Reguli did not believe that the County was required to pay for Mr. Cruz's defense and did not believe that the County should be paying for Mr. Cruz's defense. Ms. Reguli believed that paying for Mr. Cruz's defense is an improper use of public funds, and she and her client's mother in the J.H. litigation had argued publicly and privately that the

---

[8] This proposition should not be understood as foreclosing the government from raising additional grounds in litigation beyond those stated in the written denial of the public records request.

[9] Under an alternative reading, the trial court would appear to be sanctioning Ms. Reguli for generally improper conduct as an attorney. The filing of the Petition served as the act for which Ms. Reguli is being sanctioned in the present case, and it is that Petition which must have been filed for an improper purpose.

County should stop paying for it. They both believed the County paying for Mr. Cruz's defense was legally and morally improper. Additionally, there were also suggestions in the questioning of Ms. Reguli raising concerns regarding Ms. Reguli having previously made material that was under seal publicly available. Ultimately, the trial court was concerned that Ms. Reguli would use the records obtained as further ammunition for her public discourse in opposition to the County paying for Mr. Cruz's defense.

Some state and federal courts have reached the conclusion that a meritorious filing or well-founded complaint cannot be sanctioned for having been filed for an improper purpose. While placing excessive or repetitive filings in a separate category, the Utah Supreme Court, for example, indicated with regard to original filings that "[t]he filing of a complaint with a good faith basis in law and fact cannot sustain sanctions on the grounds of 'being presented for an[] improper purpose.'" *InnoSys, Inc. v. Mercer*, 364 P.3d 1013, 1027 (Utah 2015). Federal courts have split over the question of whether sanctions are available based upon an improper purpose for a meritorious filing or well-founded complaint. David F. Herr & Roger S. Haydock, 1 Minn. Prac., Civil Rules Annotated § 11:22 (6th ed. 2023) (noting that federal "[c]ourts are divided regarding whether a claim with merit can ever violate the improper purpose prong of Rule 11"); Jerold S. Solovy et al., Sanctions under Federal Rules of Civil Procedure 11, C842 ALI-ABA 97, 160 (1993) ("Courts are split over the question of whether a lawyer or party can be sanctioned for filing a well-founded complaint for improper purposes.").

The language of Tennessee Rule of Civil Procedure 11.02(1) sets forth a limitation on filings for an "improper purpose" and notes as illustrations thereof "such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." There is no requirement of frivolousness under Rule 11.02 in Tennessee as a gateway to finding "improper purpose." Accordingly, while a filing being meritorious or a complaint being well-founded certainly does not support a finding of improper purpose, they do not create a protective shield barring a finding of improper purpose under Rule 11.02 in Tennessee. *See*, *e.g.*, *Andrews v. Bible*, 812 S.W.2d 284, 287 (Tenn. 1991) (emphasis added) (stating that "[t]he certification which results from the attorney's signature on a motion, pleading, or other document is directed at the three substantive prongs of Rule 11: its factual basis, its legal basis, *and its legitimate purpose*"); *Hooker v. Sundquist*, 107 S.W.3d 532, 535 (Tenn. Ct. App. 2002) (emphasis added) (indicating that "[w]hen an attorney signs a motion, document, or other paper submitted to the court, he certifies to the court that he has read it, that he has reasonably inquired into the facts and law it asserts, that he believes it is well-grounded in both fact and law, *and that he is acting without improper motive*" (footnote omitted)). This variance between Tennessee and other jurisdictions is supportive of the trial court's ruling, but the critical question remains what constitutes an improper purpose.

Interpreting language similar to Tennessee Rule of Civil Procedure 11.02, a number of state and federal courts have explored precisely that question -- what constitutes an

improper purpose for purposes of their respective versions of Rule 11. North Carolina courts, interpreting language similar to Tennessee's Rule 11,[10] have repeatedly described an improper purpose in terms of a pleading being filed for "any purpose other than one to vindicate rights . . . or to put claims of right to a proper test." *See*, *e.g.*, *Jonna v. Yaramada*, 848 S.E.2d 33, 47 (N.C. Ct. App. 2020) (quoting *Mack v. Moore*, 418 S.E.2d 685, 689 (1992)). Also addressing similar language to Tennessee Rule of Civil Procedure 11 with regard to improper purpose filings,[11] federal courts have observed that "[f]iling a lawsuit to 'vindicate rights' through the judicial process . . . is almost always objectively reasonable.'" *See*, *e.g.*, *Rivers v. Wynne*, No. 6:22-CV-00034, 2023 WL 6432976, at *3 (W.D. Va. Sept. 30, 2023) (quoting *Rivers v. United States (Bowman)*, No. 6:18cv61, 2020 WL 6880967, at *2 (W.D. Va. Nov. 23, 2020)). Where the underlying purpose of a filing is to vindicate a client's rights, the purpose is not improper. *Coates v. United Parcel Servs., Inc.*, 933 F. Supp. 497, 501 (D. Md. 1996) (noting that if a complaint is filed to vindicate rights as well as for another purpose, the conduct is not sanctionable so long as the additional purpose is not taken in bad faith), *aff'd sub nom. Davis v. United Parcel Serv.*, 129 F.3d 116 (4th Cir. 1997). To show an improper purpose, a number of federal courts have imposed a burden to "demonstrate that the filer lacked a sincere intent to pursue the claim." *ContraVest Inc. v. Mt. Hawley Ins. Co.*, No. 9:15-CV-00304-DCN, 2018 WL 5793601, at *5 (D.S.C. Mar. 30, 2018) (quoting *United States v. Henry*, 2017 WL 1065820, at * 1 (E.D. Va. Mar. 20, 2017)). Addressing federal court decisions regarding improper purpose, commentators have observed that a proper purpose exists where the filing is submitted with the purpose "to obtain the requested relief." John P. Brumbaugh, J. Andrew Pratt, and John C. Toro, 6 Bus. & Com. Litig. Fed. Cts. § 68:8 (5th ed. 2022). Furthermore, "[t]he basic notion is that it is an improper purpose to engage in litigation for a purpose

---

[10] Rule 11(a) of the North Carolina Rules of Civil Procedure provides, in part, that

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, ***and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation***.

(Emphasis added).

[11] Under Federal Rule of Civil Procedure 11:

> (b) **Representations to the Court.** By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation. . . .

other than intending to obtain relief from the judicial action." David H. Taylor, *Defending the Indefensible to Further A Later Case: Sanctioning Respondents in Illinois Domestic Violence Cases*, 23 N. ILL. U. L. REV. 403, 428-29 (2003).

Mixed motive cases can arise involving a mixture of proper and improper purposes. In such circumstances, the United States Court of Appeals for the Second Circuit concluded that "[a] party should not be penalized for or deterred from seeking and obtaining warranted judicial relief merely because one of his multiple purposes in seeking that relief may have been improper." *Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995). The United States Court of Appeals for the Fourth Circuit stated that "if a complaint is filed to vindicate rights in court, and also for some other purpose, a court should not sanction counsel for an intention that the court does not approve, so long as the added purpose is not undertaken in bad faith and is not so excessive as to eliminate a proper purpose. Thus, the purpose to vindicate rights in court must be central and sincere." *In re Kunstler*, 914 F.2d 505, 518 (4th Cir. 1990). The United States Court of Appeals for the Fifth Circuit determined that "improper purpose cannot stand on its own if it lacks . . . but-for causative force" and, accordingly, required that "a claim of improper purpose in the prosecuting of a claim contain an element of causation—that the claim would not otherwise have been pursued." *F.D.I.C. v. Maxxam*, Inc., 523 F.3d 566, 583 (5th Cir. 2008).

In the present case, Ms. Reguli requested public records, as was her right as a citizen. *See* Tenn. Code Ann. § 10-7-503(a)(2)(A). She was denied on a basis that she did not believe to be lawful, and she filed her Petition as authorized by statute in Tennessee to obtain the public records that she had been denied. *See* Tenn. Code Ann. § 10-7-505(a). There does not appear to be any dispute that Ms. Reguli was genuinely seeking to obtain these public records and that she filed her Petition in order to obtain public records that she had been denied in accordance with an express statutory authorization to do precisely that. *See id.* In a conventional analysis of improper purpose, Ms. Reguli filing to obtain the relief she sought in her Petition would in and of itself appear to indicate that Ms. Reguli's purpose was not improper. The trial court's concern does not appear to be that Ms. Reguli filed her Petition without actually caring about whether she obtained the records or was not trying to obtain the records but instead was trying to harass, delay, or increase the cost of litigation. *See* Tenn. R. Civ. P. 11.02(1). It is instead the anticipated use to which Ms. Reguli intended to put these public records, should she prevail in her Petition, that formed the basis for the trial court's conclusion that Ms. Reguli's Petition had an improper purpose. In reaching a determination that the anticipated use of the public records rendered the purpose of filing the Petition improper, the trial court moved from the center of what constitutes an improper purpose under Rule 11.02(1).

The question then becomes whether in doing so the trial court reached beyond the permissible boundaries of Rule 11.02(1). In considering that question, we turn to the matter of Ms. Reguli's anticipated use of information in the public records, information regarding the amount of public expenditures on the defense of Mr. Cruz by the County. The

- 28 -

anticipated misuse of the public records that concerned the trial court was Ms. Reguli's anticipated use of the public records as further ammunition in her public discourse in opposition to such funding. It appears that the trial court was especially concerned with Ms. Reguli speaking to elected officials and voters regarding what she believes to be a misuse of public funds in paying for Mr. Cruz's defense.

With regard to concerns about usage, the testimony before the trial court raised serious questions about how Ms. Reguli handles materials under seal and whether she has previously disseminated materials under seal publicly. Insofar as the trial court's decision may be related to a concern about disclosure of documents under seal, Ms. Reguli is not seeking to gain access to records under seal via her Petition. She is not gaining access to the records based on her status as an attorney in the course of litigation. The records she is seeking are public records. *See* Tenn. Code Ann. § 10-7-503(a)(1)(A). Any citizen of the State of Tennessee has a right to access these records. *See* Tenn. Code Ann. § 10-7-503(a)(2)(A). In fact, any citizen denied access to public records either in whole or in part has a statutory right to petition for access to the records, *see* Tenn. Code Ann. § 10-7-505(a), precisely the act which Ms. Reguli has been sanctioned for pursuing. As a general matter, making publicly available documents that the public has a right to access under the Public Records Act is not a sanctionable improper purpose of the filing of a petition under the Public Records Act.

Preemptively sanctioning Ms. Reguli because of her anticipated use of documents available to the public under the Public Records Act in communicating with public officials regarding her disapproval of certain public expenditures raises serious problems with running afoul of the Public Records Act. As noted above, this court has indicated that a citizen's "motive or reason for wishing to review" a public record is "immaterial." *Kersey*, 253 S.W.3d at 629. The official Williamson County public records request form is consistent with a view of the inconsequential nature of the motive or intended use of the document. The form asks for neither the motive for which the public record is being sought nor how the public record is going to be used.

Preemptive sanctioning of speech that has not yet been uttered also raises serious questions related to constitutional safeguards against prior restraints upon speech. Ms. Reguli is being sanctioned with denial of access to a document that all other Tennessee citizens can obtain based upon what it is anticipated that she will say after the public records are in her possession. She is also being sanctioned, including a monetary penalty, for speech that she has not yet uttered. The United States Supreme Court has observed that "prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). Prior restraints are prohibitions upon "speech before the speech is uttered or otherwise disseminated." *McCarthy v. Fuller*, 810 F.3d 456, 461 (7th Cir. 2015). "Courts generally presume that restraining speech before it is uttered violates the First Amendment, even when the speaker can be punished for the speech after it is made." Christina M.

Mulligan, *Perfect Enforcement of Law: When to Limit and When to Use Technology*, 14 RICH. J.L. & TECH. 13, 45 (2008). With regard to public records, "attempting to dictate how a requester uses a public record could run afoul of First Amendment prohibitions against the 'prior restraint' of speech." Frank D. LoMonte, *Copyright versus the Right to Copy: The Civic Danger of Allowing Intellectual Property Law to Override State Freedom of Information Law*, 53 LOY. U. CHI. L.J. 159, 181 (2021). Addressing a public records-related limitation, the Washington Court of Appeals concluded that "the publishing of accurate and lawfully obtained public records is constitutionally protected speech" and a prohibition upon such publication constitutes a "prior restraint." *Catlett v. Teel*, 477 P.3d 50, 60 (Wash. Ct. App. 2020). We do not reach a conclusion as to whether the trial court's sanction order violated these constitutional safeguards; rather, we note these constitutional safeguards would require careful consideration when imposing a sanction in such circumstances.

There are also serious questions that arise related to the constitutional right to petition in connection with the trial court's sanctioning Ms. Reguli based upon her anticipated speech. The anticipated speech that gave rise to the trial court's concern involved Ms. Reguli speaking to elected officials in opposition to continuing public expenditures in support of Mr. Cruz's defense, which she believed to be improper, immoral, and unwarranted expenditure of public funds. Article I, section 23 of the Tennessee Constitution states that

> the citizens have a right, in a peaceable manner, to assemble together for their common good, to instruct their representatives, and to apply to those invested with the powers of government for redress of grievances, or other proper purposes, by address or remonstrance.

The First Amendment to the United States Constitution, as applied to the states via the Fourteenth Amendment, similarly protects the right "to petition the Government for a redress of grievances." Sanctioning Ms. Reguli for speech to public officials in opposition to existing government expenditures raises serious questions in relation to the right to petition. As with prior restraints, we do not reach a conclusion as to whether the trial court's sanction order violated these constitutional safeguards; rather, we note these constitutional safeguards would require careful consideration when imposing a sanction in such circumstances.

We do not suggest that Ms. Reguli's anticipated speech as to the public records relating to the amount of the expenditures by the County is not problematic or that the trial court's concerns regarding usage were unwarranted. In fact, we do not suggest that Ms. Reguli and her client J.H. are immune from any consequence should she actually engage in such speech. Addressing attorney statements made in the context of representation while a case is pending, the Tennessee Supreme Court has observed the following:

Courts have let the government limit the speech of lawyers when the speech pertains to a pending judicial proceeding or when it prejudices the administration of justice. . . . "[L]awyers in pending cases [are] subject to ethical restrictions on speech to which an ordinary citizen would not be." . . . Some courts reason that "an attorney, by the very nature of his job, voluntarily agrees to relinquish his rights to free expression in the judicial proceeding . . . ."

*Gentile*, for example, involved out-of-court statements by a lawyer who represented a party to a pending proceeding in court. The United States Supreme Court commented in that case that "the speech of lawyers representing clients in pending cases may be regulated under a less demanding standard" than the standard for regulation of the press. It described a balancing process in such cases, in which the court "weighs the State's interest in the regulation of a specialized profession against the lawyer's First Amendment interest in the kind of speech that was at issue." . . . This balancing process gives appropriate weight to "the vital role that the justice system plays in our society and the state's unique interests in regulating the legal profession."

State courts that have addressed lawyer speech outside the courtroom but in a pending case have reasoned that such speech "'may be regulated under a less demanding standard' because the lawyer in that role is an officer of the court." . . . *See also Iowa Sup. Ct. Att'y Disciplinary Bd. v. Weaver*, 750 N.W.2d 71, 90 (Iowa 2008) (stating it is "well established that the speech of lawyers may be curtailed in order to avoid improper influence on pending cases ... to otherwise prevent the obstruction of justice."). The U.S. Supreme Court views the State's interest similarly, noting that "[t]he interest of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been 'officers of the courts.'" . . .

To evaluate the lawyer's interest in the *Gentile* balancing process, we consider not only the context but also the purpose of the speech. For example, "[l]awyer speech that advances client interests, checks governmental power, or advocates on matters of public concern is provided the utmost protection under the First Amendment." . . .

In the balancing process, lawyer speech for such purposes would be weighed heavily.

*Manookian v. Bd. of Prof'l Resp. of Sup. Ct. of Tenn.*, No. M-2022-00075-SC-R3-BP, 2024 WL 658959, __S.W.3d __, at *27-28 (Tenn. Feb. 16, 2024) (citations omitted).

The problem in this case is not necessarily that Ms. Reguli or her client could never suffer an adverse consequence should she persist. Instead, the problem is that the trial court's determination that Ms. Reguli's anticipated use of the public record is sanctionable conduct is a decision reached by the wrong court, in the wrong context, and at the wrong time without the proper analysis of the constitutional considerations. There are any number of tools, up to and including dismissal of her client's suits against Mr. Cruz, that are available to the courts overseeing the civil suits in state and federal courts to protect the fairness of the proceedings before them. There are also any number of tools available to the Board of Professional Responsibility to address violations of the Tennessee Rules of Professional Conduct where an attorney violates those Rules. The trial court in this case, however, is neither overseeing the civil suits against Mr. Cruz nor functioning as a disciplinary board reviewing adherence to the Rules of Professional Responsibility and imposing sanctions for violation thereof. The trial court's role here is more limited, as is this court's role in considering the appeal. The trial court had before it Ms. Reguli's Petition asserting that she is entitled to certain records under the Public Records Act. This court has before it the question of whether the trial court erred in imposing sanctions under Rule 11 for Ms. Reguli's act of filing her Petition under the circumstances of this case. Neither the trial court nor this court is presented with the question of what the courts overseeing the civil litigation by J.H. against Mr. Cruz should do in the respective cases before them about Ms. Reguli's questionable speech to elected officials and voters about Mr. Cruz and the County's paying for his representation.

Here, the action for which Ms. Reguli is subject to sanction is the act of filing a petition under the Public Records Act. The context of this matter, a Petition under the Public Records Act as well as the nature of speech being directed towards public officials regarding what Ms. Reguli believes to be improper governmental expenditures, and the timing, prior to the speech actually being uttered, significantly exacerbate the complexities of an already complex case.

The circumstances and context create at least six complications with imposing sanctions based upon Ms. Reguli's anticipated speech regarding any public records that she might obtain. One, courts should be particularly cautious about the dangers of imposing sanctions in public records cases because of concerns about chilling the vindication of citizens' rights to access public records and, thereby, reducing the transparency of government. Two, Ms. Reguli's Petition was filed in order to obtain records to which she was denied access and to which she believed herself to have a legal right under Tennessee law. In other words, she was seeking through her Petition to vindicate her right to the public records. In general, this is the definition of a proper purpose, and there does not appear to be any dispute that Ms. Reguli genuinely wanted to obtain these public records which she reasonably believed she had a legal right to access. Three, the act of filing of the Petition itself was done with the goal of obtaining the relief sought and not done to harass, delay, or increase costs. The improper purpose identified

by the trial court instead arose in relation to the anticipated use to which Ms. Reguli would put the public records if she prevailed in this litigation, that is, after obtaining the relief that she sought. Application of the Rule 11 improper purpose limitation in these circumstances stretches beyond the center of the Rule's restriction.

Four, sanctioning in connection with the anticipated use of public records runs squarely into the Public Records Act, which as a general matter is unconcerned with the use to which the requester is going put the public records after having acquired them. In this vein, this court has suggested that even inquiring into the requester's motive in seeking public records is improper, yet Ms. Reguli is being sanctioned for her ultimate intended use. Five, sanctions imposed for speech not yet uttered raise serious questions in relation to prior restraints upon speech that were not addressed by the trial court. Six, sanctions for anticipated speech that involves raising grievances before elected officials about public expenditures that one believes to be improper and unwarranted raises serious questions as to the right to petition that were not addressed by the trial court.

Ultimately, we conclude that under the circumstances of the present case sanctioning Ms. Reguli based upon her anticipated speech regarding a public record transgresses the legal bounds of permissible Rule 11 sanctions. Therefore, while affirming the trial court's findings of sanctionable conduct as to the false statement in her Petition, we conclude the trial court erred in imposing sanctions based upon Ms. Reguli's act of filing her Petition under the Public Records Act.

V.

Among the sanctions imposed by the trial court for Ms. Reguli's violation of Rule 11 of the Tennessee Rules of Civil Procedure is a $5,000 penalty. Ms. Reguli challenges the $5,000 penalty, arguing that it violates the Fifty-Dollar Fine Clause of Article VI, Section 14 of the Tennessee Constitution.[12] "Issues of constitutional interpretation are questions of law, which we review de novo without any presumption of correctness given to the legal conclusions of the courts below." *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 836 (Tenn. 2008).

Tennessee's Fifty-Dollar Fine Clause is a unique constitutional provision. *City of Chattanooga v. Davis*, 54 S.W.3d 248, 257 (Tenn. 2001). "[N]o other provision like it may be found either in the Federal Constitution or in any other modern state constitution. . . .

---

[12] Ms. Reguli also references the prohibition upon excessive fines in the Eighth Amendment to the United States Constitution. The Eighth Amendment provides that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Because we conclude that Ms. Reguli is entitled to relief pursuant to the Fifty-Dollar Fine Clause of the Tennessee Constitution, and because Ms. Reguli fails to develop any argument showing how she would be entitled to any greater relief under the Eighth Amendment, the Excessive Fines issue is pretermitted.

- 33 -

Similar clauses did not appear in any colonial charter, in any early state constitution, including the 1776 North Carolina Constitution, or in the Constitution of the State of Franklin." *Id*. Tennessee's Fifty-Dollar Fine Clause guarantees that

> No fine shall be laid on any citizen of this State that shall exceed fifty dollars, unless it shall be assessed by a jury of his peers, who shall assess the fine at the time they find the fact, if they think the fine should be more than fifty dollars.

Tenn. Const. art. VI, § 14. "The fifty-dollar fine clause is substantially the same today as it was when adopted as part of our state's first constitution in 1796." *Barrett v. Tenn. Occupational Safety & Health Rev. Comm'n*, 284 S.W.3d 784, 787 (Tenn. 2009).[13]

The Tennessee Supreme Court has ruled that the Fifty-Dollar Fine Clause "applies only to the judicial branch of government," *Barrett*, 284 S.W.3d at 789-90, and has noted that its "jurisprudence consistently has affirmed that the clause is intended to limit only the power of the judiciary." *Id*. at 788. The Tennessee Supreme Court cited the following Tennessee precedent in addressing the rationale of the Fifty-Dollar Fine Clause:

> [*State v.*] *Martin*, 940 S.W.2d [567,] 570 [(Tenn. 1997)] ("The prohibition against a trial judge fixing fines exceeding $50 was intended to protect citizens from 'excessive' fines fixed by a powerful judiciary."); *State v. Bryant*, 805 S.W.2d 762, 763 (Tenn.1991) ("Distrust of a powerful judiciary was said to have been the reason for . . . the constitutional provision."); *Upchurch v. State*, 153 Tenn. 198, 281 S.W. 462, 464 (1925) ("The object of the limitation . . . was to prevent judges from imposing unreasonable fines. . . ."); *Poindexter v. State*, 137 Tenn. 386, 193 S.W. 126, 128 (1917) ("Were it not for section 14 of article 6 of the Constitution, an impecunious defendant upon whom a large fine had been imposed might be imprisoned for years at the will of the judge alone who tried him.").

*Barrett*, 284 S.W.3d at 788.

Not all monetary assessments imposed by trial courts are subject to the limitations

---

[13] Article V, Section 11 of the Tennessee Constitution of 1796 provided that "No fine shall be laid on any Citizen of this State that shall exceed fifty Dollars, unless it shall be assessed by a Jury of his Peers who shall assess the fine at the time they find the Fact, if they think the fine ought to be more than fifty Dollars." The Tennessee Supreme Court has noted that "[a]t that time, article V was the judicial article." *Barrett*, 284 S.W.3d at 787 n.1. Article VI, Section 14 of the Tennessee Constitution of 1834 stated that "No fine shall be laid on any citizen of this State, that shall exceed fifty dollars; unless it shall be assessed by a Jury of his peers, who shall assess the fine at the time they find the fact, if they think the fine should be more than fifty dollars."

of the Fifty-Dollar Fine Clause. *City of Chattanooga*, 54 S.W.3d at 259 (stating that "the restriction on imposing 'fines' contained in Article VI, section 14 does not prevent a court from imposing any monetary assessment in excess of fifty-dollars"). The Tennessee Supreme Court has identified the original public meaning of the term "fine" in the Fifty-Dollar Fine Clause to be "a payment to a sovereign as a punishment for some offense." *Id*. (quoting *Browning–Ferris Industries of Vt., Inc. v. Kelco Disposal*, 492 U.S. 257, 265, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989)). The Tennessee Supreme Court has also indicated that this constitutional provision applies to monetary assessments where "either the intended purpose or the actual purpose or effect of the monetary assessment is to serve as a punitive measure." *Id*. at 251. The line of demarcation between constitutionally fair and foul turns upon the remedial versus punitive nature of the monetary assessment. *Barrett*, 284 S.W.3d at 789 (noting that the test developed by the Tennessee Supreme Court "focuses on the distinction between punitive and remedial monetary penalties"); *Town of Nolensville v. King*, 151 S.W.3d 427, 433 (Tenn. 2004) ("We stress that our holding today . . . applies only to *punitive* monetary sanctions and preserves . . . power to impose *remedial* monetary assessments").

Truly remedial purposes of a monetary assessment "include those that (1) compensate for loss; (2) reimburse for expenses; (3) disgorge 'ill-gotten' gains; (4) provide restitution for harm; and (5) ensure compliance with an order or directive, either through the execution of a bond, or . . . through a prospectively coercive fine." *City of Chattanooga*, 54 S.W.3d at 270. While acknowledging that remedial measures naturally have some aspect of deterrence, the Tennessee Supreme Court determined that "when the *predominant* purposes served by" the judicially imposed "penalty are to provide general and specific deterrence and to ensure overall future compliance with the law, then the monetary penalty should be deemed as serving punitive purposes," which brings it into conflict with the Fifty-Dollar Clause. *Id*. The Tennessee Supreme Court emphasized this point, reiterating "that if the predominant 'remedial' purpose served by a monetary sanction is ensuring deterrence against future wrongdoing, then the sanction more properly appears to be punitive in actual purpose or effect." *Id*. at 270 n.22.

Here, the trial court ordered Ms. Reguli "to pay a penalty to the Chancery Court of Williamson County, Tennessee in the total amount of $5,000."[14] The trial court expressly indicated its reason for the imposition of this penalty was "to deter repetition of comparable conduct." Addressing the deterrence rationale, the trial court stated in its order that "[e]ither the earlier sanctions were insufficient or Ms. Reguli is impervious to correction. Therefore, the Court finds that greater, more robust sanctions are justified; had Ms. Reguli not complied with those earlier sanctions, the Court's sanctions today would by necessity

---

[14] We note this case does not involve what are seeming more remedial sanctions under Rule 11.03(2); for example, "an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." Here, the trial court disclaimed such a purpose when it stated that it could not award the County its monetary costs associated with defending against Ms. Reguli's Petition because the County did not seek Rule 11 sanctions.

be even greater."

It is undeniable that "[a] fifty dollar fine in contemporary value lacks the weighty and serious quality a fifty dollar fine would have had two hundred years ago." *Town of Nolensville*, 151 S.W.3d at 433. After all, even within the scope of an average lifetime, changes in value and prices can be dizzying whether one considers substantial expenditures like a home or automobile or everyday purchases at a grocery or convenience store. Applied over an even longer scope of time, the changes become more pronounced. Reflecting upon the inclusion of monetary figures in constitutions in the context of fluctuations of price and value, the Tennessee Supreme Court, therefore, observed that "[h]ad the delegates to the Constitutional Convention of 1796 known that the provision would survive unchanged for more than 200 years, they likely would not have included a precise monetary figure. Nonetheless, this Court is constrained to uphold the plain language of the Tennessee Constitution." *Id*. at 433-34. Under the plain language of the Tennessee Constitution, the trial court's imposition of a $5,000 penalty in the present case transgresses the constitutional limitations of the Fifty-Dollar Fine Clause.

VI.

Ms. Reguli also argues that the trial court erred in denying her motion to alter or amend without holding a hearing thereupon. Noting Ms. Reguli's failure to follow proper procedure for having such hearings set under the Williamson County Local Rules, the trial court denied the motion to alter or amend without a hearing in accordance with a Local Rule. Ms. Reguli does not dispute that the trial court's actions were in accordance with the Local Rule. Instead, Ms. Reguli states that the denial of her motion without a hearing created a "substantial injustice" and was, thus, impermissible. Ms. Reguli fails to develop an argument or offer support for this proposition; therefore, we conclude this argument is waived. *See Sneed*, 301 S.W.3d at 615 ("It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived.")

VII.

To reiterate, for the reasons discussed above, we conclude that the trial court did not err in determining that Ms. Reguli violated Rule 11 by advancing a false statement regarding a decision of the Sixth Circuit and supporting this false statement with a deceptively crafted exhibit. We conclude, however, that the trial court exceeded the bounds of Rule 11 by finding under the circumstances of the present case that Ms. Reguli engaged in sanctionable conduct through her act of filing her Petition under the Public Records Act. We also conclude that the trial court's imposition of a $5,000 penalty violated the Fifty-Dollar Fine Clause of the Tennessee Constitution. Given these findings, we conclude that the more appropriate course with regard to addressing the proper sanction in

relation to Ms. Reguli's conduct that did violate Rule 11 should be determined on remand before the trial court. Accordingly, we vacate the imposition of the three sanctions imposed by the trial court[15] and remand for determination of an appropriate sanction or sanctions in light of our decision in this case.

## VIII.

Ms. Reguli also asks this court to consider post-judgment facts and provides a number of documents that she requests we consider. Assuming for purposes of argument that the facts she asks us to consider would be appropriate for such consideration, it is unclear precisely how the facts advanced by Ms. Reguli assist in her appeal. These post-judgment facts appear to reveal that the trial court became aware after entering its final order, that is on appeal in the present case, that Ms. Reguli may have perjured herself in testimony before the trial court during the Rule 11 related hearing. Specifically, Ms. Reguli may have perjured herself in responding to questions regarding whether she had actually previously paid a monetary sanction that she had been ordered to pay to the Williamson County Court Appointed Special Advocates in response to a prior Rule 11 violation in 2014. She claimed to have paid this fine, but questions arose as to whether she actually did so.

The post-judgment facts that she asks us to consider further reflect that the Williamson County Grand Jury subsequently returned an indictment against Ms. Reguli for one count of aggravated perjury, and the trial court judge in the present case has now recused himself from any cases in which Ms. Reguli is a party. While this information informs this court that on remand a different judge will now have the challenging responsibility to determine the appropriate sanction based upon Ms. Reguli's sanctionable conduct, we fail to discern how these post-judgment facts indicate any error by the trial court with regard to its ruling upon Ms. Reguli's previous motions to recuse that are at issue in this appeal. There is nothing in these post-judgment facts that is particularly favorable for Ms. Reguli, and certainly nothing that suggests anything other than responsible and prudent action by the trial court judge.

## IX.

For the aforementioned reasons, we affirm in part, reverse in part, and vacate in part

---

[15] As noted above, the trial court imposed three distinct sanctions. For the first sanction, the trial court dismissed Ms. Reguli's Public Records Act Petition with prejudice. For the second sanction, the trial court ordered Ms. Reguli "to pay a penalty to the Chancery Court of Williamson County, Tennessee in the total amount of $5,000." As for the third sanction, the trial court ordered that "upon entry of this order, in all civil actions in the 21st Judicial District in which Ms. Reguli is a self-represented party, Ms. Reguli shall engage, at her expense, associate counsel, licensed to practice law in Tennessee, for the limited purpose of ensuring compliance with Rule 11.02."

the judgment of the Chancery Court for Williamson County. Costs of this appeal are taxed equally to the Appellant, Connie Reguli, and the Appellee, Roger Anderson as Mayor of Williamson County, Tennessee. The case is remanded for such further proceedings as may be necessary and consistent with this opinion.

_____
JEFFREY USMAN, JUDGE